IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-CV-80305-WPD

KENNETH WOLINER, M.D.

      Plaintiff,

          v.

MARTHA SOFRONSKY, KRISTEN
SUMMERS, LOUISE WILHITE ST. LAURENT,
and LUCY GEE.

      Defendants.

_____/

## DEFENDANTS, KRISTEN SUMMERS, LOUISE ST. LAURENT AND LUCY GEE'S MOTION FOR FINAL SUMMARY JUDGMENT

COME NOW, the Defendants, KRISTEN SUMMERS ("Summers"), LOUISE ST. LAURENT ("St. Laurent"), and Lucy Gee ("Gee") (collectively "the Defendants"), by and through undersigned counsel, and pursuant to Fed. R. Civ. P. 56, hereby move for an Order granting final summary judgment to the Defendants on all counts.

## INTRODUCTION

This cause of action arises from the prosecution and eventual revocation of Plaintiff's medical license by the Florida Department of Health (hereinafter "DOH"). The prosecution was a result of Plaintiff's care and treatment of S.S., a young woman who passed away from Hodgkin's lymphoma. Martha Sofronsky is the mother of S.S. Summers and St. Laurent brought the case to a final Division of Administrative Hearing trial (hereinafter "the trial") which occurred on February 2-3, 2016. The bulk of Plaintiff's claims arise from these proceedings. The Operative Complaint [DE 43] alleges the following Counts against the DOH Defendants: Count I – Illegal interception, disclosure and use of Oral Communication; Count II- Violation of Plaintiff's Due Process Rights Pursuant to the First and Fourteenth Amendments of the United

States Constitution pursuant to 42 U.S.C. § 1983; Count III- Conspiracy to Violate Civil Rights Pursuant to 42 U.S.C. § 1985; and Count IV Intentional Infliction of Emotional Distress[1].

The undisputed material facts will demonstrate that Plaintiff's claims are mere speculation and entirely unsupported by the record. Defendants are entitled to Absolute Immunity and Qualified immunity. Summary Judgment is due to be granted on all counts.

## <u>UNDISPUTED MATERIAL FACTS</u>

**a. Background**

1. Plaintiff was a licensed medical doctor practicing in the field of "integrative medicine." He first treated S.S. in March 2011. Exhibit A, Plaintiff Depo. at 105: 18-20.

2. Gee is the Director of the Division of Medical Quality Assurance (MQA) at the Florida Department of Health. Ms. Gee is not an attorney. Her duties do not include the supervision of the Prosecution Services Unit, which is the division including St. Laurent or Summers. DE 37-3 Affidavit of Lucy Gee.

3. St. Laurent is the Interim General Counsel for DOH. Exhibit B St. Laurent's Answers to Interrogatories at ¶ 1. At the time of Plaintiff's trial St. Laurent was supervising Summers, who was the assigned prosecutor. Her employment with DOH began on March 1, 2013. DE 37-2 Affidavit of St. Laurent.

4. Summers is currently a Senior Attorney in DOH's Prosecution Services Unit. Exhibit C Summers Answers to Interrogatories at ¶ 1. Summers was admitted to practice law in September 2014 and began her employment with DOH in September 2014. DE 37-1 Affidavit of Kristen Summers.

**b. Complaints to the Department of Health**

5. Plaintiff alleges that while practicing medicine, he became a vocal critic of the healthcare industry. DE 1-2 Complaint at ¶ 16. Plaintiff began reporting each instance of abuse to DOH Division of Medical Quality Assurance. *Id.* at ¶ 17. These complaints most frequently involved unlicensed activity. *Id.* Plaintiff claims these complaints languished at the MQA and were not sufficiently investigated. *Id.*

---

[1] Count IV does not pertain to Defendant Gee.

6. The majority of the complaints filed with DOH occurred between 2010 and 2014. Exhibit A Plaintiff Depo. at 113:7-12. Plaintiff does not recall if he made any complaints to Summers. *Id*. at 128:17-129:2.St. Laurent had one email exchange with Plaintiff regarding a complaint that he filed in 2013 or 2014. *Id*. at 57:20-58:1. Plaintiff does not have an independent recollection of the conversation. *Id*. at 58:2-59:10. Plaintiff participated in two conference calls with Gee and other DOH staff regarding his complaints. *Id*. at 50:20- 51:1. Plaintiff does not have an independent recollection of specific comments made by Ms. Gee. *Id*. at 54:19-21.

7. Plaintiff is not aware of any written or verbal communicates by the DOH Defendants to suggest that they intended to retaliate against Plaintiff. *Id.* at 61:21-62:8. None of the named Defendants ever told Plaintiff to stop filing complaints; nor, encouraged him to stop filing complaints. Id. at 112:12-113:2.

### c. The Recording

8. On April 29, 2013, shortly after S.S.'s death, Sofronsky attended a meeting in Plaintiff's office. DE 1-2 at ¶ 32.

9. Sofronsky was not a patient of Plaintiff's and they did not have a patient-doctor relationship. Exhibit A Plaintiff Depo. at 105:16-17

10. Plaintiff referred to this meeting as a "bereavement session." DE 1-2 at ¶ 32.

11. During this meeting the conversation was recorded by Ms. Sofronsky on a MP3 recording device ("the recorder"). *Id.*

12. The recording device contained the voices of Ms. Sofronsky, Plaintiff and another female from Plaintiff's staff. Exhibit D St. Laurent Depo. at 45:20-23.

13. Plaintiff had a regular practice of recording sessions with his patients. Exhibit E Ricciardi Depo at 14:13-15:1.[2] S.S. used her personal recorder to record these sessions in the past. Exhibit F Sofronsky Depo. at 220:19-221:3.

14. Plaintiff recalled recording S.S.'s sessions when Sofronsky was also present on at least three occasions. Exhibit A Plaintiff Depo. at 101:15-20.

15. Plaintiff did not have a formal policy regarding these recordings. Exhibit G Ricciardi Depo. at 26:7-18. Exhibit F Sofronsky Depo. at 216:15-217:1.

---

[2] This citation refers to the deposition testimony of Gina Ricciardi taken on January 6, 2015, during Plaintiff's underlying prosecution

16. In the past, Plaintiff has permitted his patients to record his sessions using their own recording devices. Exhibit E Ricciardi Depo at 14:13-15:1.[3]

**d. The Underlying Prosecution of Plaintiff's Medical License**

17. On November 21, 2014, a probable cause panel of the Board of Medicine convened and the Board determined that probable cause existed for violations of Section 456.331(1)(t) Fla. Stat. and 458.331(m) Fla. Stat. against Plaintiff's medical license. Exhibit H Memorandum of Finding Probable Cause; Exhibit I Transcript of North Probable Cause Panel at pg 9:18-13:22. Exhibit A Plaintiff Depo. at 67:8-68:14.

18. On December Plaintiff received notice of the charges filed against him and signed an "Election of Rights" form. Plaintiff indicated that he wanted to dispute the allegations in the Administrative Complaint. Exhibit A Plaintiff Depo at pg. 67:1-68:14. and Exh. 2.

19. Plaintiff immediately retained an attorney, who provided advice to Plaintiff and made an appearance on behalf of Plaintiff, and responded to the allegations. Exhibit A Plaintiff Depo. at 62:23-64:6.

20. On April 24, 2015, The Board of Medicine found probable cause for additional counts under Fla. Stat. 458.331 (1)(n) and 456.072(1)(o). A Second Amended Administrative Complaint was filed. Exhibit J Transcript of Board of Medicine Probable Cause Hearing at pg. 3-10.  Exhibit K Second Amended Administrative Complaint.

21. On May 8, 2015, Plaintiff again signed a form titled "Election of Rights." Exhibit A Plaintiff Depo. at 68:15-.69:10 and Exh. 3. Plaintiff indicated he received notice of the Second Amended Administrative Complaint. *Id.* Plaintiff also indicated that he disputed the allegations in the Second Amended Administrative Complaint. *Id.* The Election of Rights is signed by Plaintiff and his counsel. *Id.*

22. In preparing for the trial Plaintiff, through his counsel, had the opportunity to conduct discovery and file pre-trial motions. See Exhibit L Progress Docket.

---

[3] This citation refers to the deposition testimony of Gina Ricciardi taken on January 6, 2015, during Plaintiff's underlying prosecution

23. On January 31, 2016, Summers received an email from Sofronsky stating that she had found an audio recording of Dr. Woliner from after her daughter died. Exhibit C Summers Answers to Interrogatories at ¶ 8.

24. On February 1, 2016, the day before trial, Summers and St. Laurent travelled to the home of Sofronsky for trial preparation and Sofronsky provided them with a copy of the recording at that time. *Id.*

25. Summers and St. Laurent listened to the recording in its entirety later that evening. Exhibit M Summers Depo. at 61:16-62:6. Summers listened to the recording on several occasions in order to memorize its contents. *Id.* at 63:22-64:13.

26. St. Laurent recalled the recording initially sounded as if Sofronsky was walking through a parking lot, the recording was muffled and then Plaintiff's voice could be heard clearer and louder than Sofronsky's voice. Exhibit D St. Laurent Depo. at pg. 60:25-62:18. St. Laurent believed she heard the recorder be placed on a surface near Dr. Woliner. *Id.* at pg. 62:19-63:5.

27. Summers recalled the clear sound of a recorder being placed on a table, a greeting exchanged between Plaintiff and Sofronsky, and that the Plaintiff's voice could be heard clearly. Exhibit M Summers Depo. at 65:8-16.

28. Summers and St. Laurent were aware that Plaintiff had a common practice of permitting his patients and clients to record their appointments with him, including previous appointments with Ms. Sofronsky and her daughter. Summers and St. Laurent believed the recording was consensual. Exhibit M Summers Depo. at 58:13-59:8.

29. Plaintiff's non-jury trial was held before the Honorable Mary Li Creasy on February 2, 2016 and February 3, 2016. Exhibit N Trial Transcript Volume I at pg. 1 and Exhibit O Volume II at pg. 1.

30. During the trial Plaintiff was represented by counsel and had two attorneys present at trial. Exhibit N Trial Transcript Volume I at pg. 5:3-8. Plaintiff had the opportunity to present evidence and cross examine witnesses. See e.g. Exhibit N Trial Transcript Volume I at pg. 4.

31. Dr. Woliner testified on his own behalf. DE 1-2 at ¶ 59.

5

32. Summers cross examined Dr. Woliner during the trial and used the April 29, 2013 recording for purposes of refreshing his recollection. Exhibit O Trial Transcript Volume II at pg. 300:7-318:11.

33. Plaintiff's counsel had an opportunity to object to the admissibility of the recording and the court entertained those objections and overruled them. Exhibit O Trial Transcript Volume II at pg. 301:10-311:11.

34. Plaintiff's counsel objected to the recording as an "illegal wiretap" and the court overruled this objection and made a finding that Plaintiff encouraged and authorized all his patients to record their conversations. Trial Transcript Volume II at pg. 308:3-309:16.

35. Summers and St. Laurent offered to produce Martha Sofronsky in order to authenticate the recording. Trial Transcript Volume II at pg. 310:16-17.

36. Summers and St. Laurent offered to play the recording in its entirety for Plaintiff and he declined. Trial Transcript Volume II at pg. 316:9-11.

37. After the hearing concluded Summers and St. Laurent returned the recorder to Sofronsky. Exhibit D St. Laurent Depo. at pg. 49:21-50:15. They did not make a copy of the recording before returning it to Sofrsonky. *Id.* at pg. 47:6-18. The Defendants are not aware of any other copies of the recording.

38. St. Laurent returned the recorder back to Sofronsky because it belonged to her deceased daughter and also contained personal recordings of S.S. See Exhibit B Louise St. Laurent's Verified Answers to Plaintiff's Interrogatories at ¶ 16; Exhibit F Sofronsky Depo. at 219:2-219:21.  St. Laurent was not under the belief that the recording may qualify as a public record at that time. *Id.*

39. Plaintiff concedes that neither St. Laurent, Summers, nor Gee physically destroyed the recording or that there is evidence that they directed Sofronsky to destroy the recording. Exhibit A Plaintiff Depo. at 159:23-162:2.

40. Plaintiff's counsel filed a lengthy proposed recommended order for the Court. Exhibit P Proposed Recommended Order. Another law firm was retained specifically to draft the exceptions to the recommended order. Plaintiff Depo at 64:9-65:7.

41. On April 29, 2016, The court issued its Recommended Order to the Board of Medicine. Exhibit P Proposed Recommended Order. The order recommended the revocation of Plaintiff's license, a fine of $16,000, and repayment of $2,990.00 to the estate of S.S. *Id.* at pg. 48.

42. On May 24, 2016, after an extension of time, Plaintiff's counsel filed lengthy exceptions to the Recommended Order. Exhibit Q Respondent's Exceptions to the Recommended Order.

43. Plaintiff received notice that the case would be proceeding to a Board of Medicine hearing, Plaintiff participated in the hearing and was present throughout. Exhibit A Plaintiff Depo at 71:18-72:20 and Exh.6. Plaintiff had an opportunity to speak to his lawyers and assist in defending the action at the hearing. *Id.*

44. On November 3, 2016, Plaintiff's case came before the Board of Medicine for final action and disposition. See Exhibit R Certified Copy of Final Order.

45. During the Board of Medicine Hearing Plaintiff had the opportunity to present his exceptions to the court's Recommended Order. See Exhibit R Certified Copy of Final Order pg. 2-12.

46. On December 29, 2016, the Board of Medicine issued its final order accepting the penalty recommended by the court. *Id.* at pg. 13. The Board of Medicine revoked Plaintiff's license.

47. Plaintiff filed a notice of appeal on December 30, 2016. Exhibit A Plaintiff Depo at 73:21-75:15 and Exhibit 7.

48. Plaintiff retained another attorney to represent him on his appeal. Id. at pg. 74:2-8. Plaintiff's counsel filed both an initial brief and a reply brief. The issues litigated on appeal where as follows:

- **The playing in open court of an illegally intercepted oral communication without proper authentication under pretenses of refreshing Dr. Woliner's recollection constitutes reversible error.**
- **Appellees failure to disclose the MP3 recording until the last minute of the hearing constitutes a discovery violation and material procedural error for which a new trial is warranted.**
- **Appellee's failure to remediate the perjury of its witnesses constitutes a material procedural error warranting a new hearing in this case.**

- **The ALJ erred in establishing a standard of care for a primary care physician (PCP) and relying on expert witness testimony that did not meet the requirements of Section 766.102, Fla. Stat.**

Exhibit A Plaintiff Depo. at pg. 73:16-77:19 and Exhs. 8 and 9 (emphasis added).

49. Plaintiff communicated with his attorneys and was involved in the appellate process. *Id.* at pg. 77:20-78:10.

50. On August 28, 2017. The First District Court of Appeal issued a Per Curiam Affirmance of the trial court's decision. Exhibit S Opinion of First DCA.

51. The First District Court of Appeal issued their Mandate on October 30, 2017. See Exhibit T Mandate.

**e. Allegations in Plaintiff's Complaint**

52. Plaintiff alleges that Summers, St. Laurent and Gee fraudulently concealed the recording from Plaintiff, knowing that is was illegally recorded, and used it against Plaintiff in ambush in violation of Fla. Stat Chap. 934. [DE 1-2 at ¶ 58].

53. Plaintiff alleges that the Defendants violated his due process rights under 42 U.S.C § 1983 by: using an expert that was not of his specific specialty at trial, failing to recognize his specialty, retaliating against him for previous speech made against DOH, the failure to disclose the recording, the use of the recording at trial, and by failing to preserve the recording as a public record. See e.g. Exhibit U Plaintiff's Answers to Interrogatories at ¶ 5 pg. 11- 30 and DE 1-2 ¶44-66.

54. Plaintiff alleges that the Defendants conspired to violate his due process rights under 42 U.S.C. § 1985 on the same factual basis. Plaintiff does not claim to be a minority or a member of a protected class. Exhibit A Plaintiff Depo. at 60:20-22. Plaintiff has no direct evidence that Gee, Summers, and St. Laurent participated in any conversation in furtherance of a conspiracy against him. *Id.* at pg. 156:25-157:17.

55. Plaintiff alleges that the Defendants intentionally inflicted emotional distress by: using "hired gun" experts at this trial, concealing the recording, using the recording in court at trial, and failing to preserve the recording as a public record. Exhibit U Plaintiff's Answers to Interrogatories at ¶ 8 pg. 33- 36.

## STANDARD OF REVIEW

The "party against whom a claim….is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate when there is no genuine dispute of any material fact. *Kingsland v. City of Miami,* 382 F.3d 1220, 1225 (11th Cir. 2004).   An issue is considered genuine if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is one that must be decided to resolve the substantive claim or defense addressed in the motion. *Id.*  Defendant, as the moving party, has the initial burden to show that there are no genuine issues of material fact to be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991).  At that point, the burden shifts to Plaintiff to show that there are material issues of fact and that summary judgment is precluded. *Id.*  The burden of Plaintiff is to show that a reasonable jury could find in his favor. *Patrick v. Bishop State Community College*, 470 Fed. Appx. 797 (11th Cir. 2012). Speculation presented by Plaintiff does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F. 3d 1169, 1181 (11th. Cir 2005).

## ARGUMENT

### I. PLAINTIFF CANNOT STATE A CAUSE OF ACTION AND HIS CLAIMS FAIL AS A MATTER OF LAW

#### a. Illegal Interception, Disclosure and Use of Oral Communications

Plaintiff does not allege that either Summers, St. Laurent, or Gee illegally recorded Plaintiff. Therefore, Plaintiff must prove that these Defendants used or disclosed Plaintiff's oral communications in violation of §§ 934.03 and 934.06. Fla. Stat.

Florida Statute § 934. 03, in relevant part, prohibits a person from the use of or disclosure of an intercepted communication as follows:

(b) ***Intentionally uses***, ***endeavors to use, or procures any*** other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when:
1. Such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
2. Such device transmits communications by radio or interferes with the transmission of such communication;
(c) ***Intentionally discloses, or endeavors to disclose,*** to any other person the contents of any wire, oral, or electronic communication, ***knowing or having reason to know that the***

> *information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;*
> (d) ***Intentionally uses***, *or endeavors to use,* the contents of any wire, oral, or electronic communication, ***knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection…***

(emphasis added). Florida Statute § 934.06 prohibits the use of intercepted communications at a trial, hearing, or any other proceeding before the court.

Florida Statute § 934. 10(2)(c) provides a good faith exception that Florida or federal law, other than 18 U.S.C. s. 2551(2)(d), permitted the conduct complained of "shall constitute a complete defense to any civil, criminal or administrative action." *See also Wood v. State,* 654 So.2d 218, 220) (Fla. 1st DCA 1995)(discussing the good faith exception). The plain language of the statue clearly requires that the individual using or disclosing the recording to have knowledge that the recording was obtained illegally in violation of the statute. The intent requirement of the statute was discussed further in *Hentz v. State,* 62 So.2d 3d 1184, 1190 (Fla. 4th DCA 2011). In this opinion Florida's Fourth District Court of Appeal held that Fla. Stat. § 934.03 is a general intent statute, stating:

> "general intent" statute is one that prohibits either a specific voluntary act or something that is substantially certain to result from the act (e.g., damage to a building is the natural result of the act of setting a building afire). A person's subjective intent to cause the particular result is irrelevant to general intent crimes because the law ascribes to him a presumption that he intended such a result....***Thus, in general intent statutes words such as "willfully" or "intentionally," without more, indicate only that the person must have intended to do the act and serve to distinguish that conduct from accidental (noncriminal) behavior or strict liability crimes....***
> *Id*. at 1190. (emphasis added).

Whether the "bereavement session" was actually illegally recorded by Sofronsky[4] is not relevant to Plaintiff's claims against the DOH Defendants.[5] Under the statute, Plaintiff must demonstrate that these Defendants were aware the recording was done in violation of the statute and then used the recording at Plaintiff's trial knowing that it was illegally obtained. *See* § 934.

---

[4] Defendants do not concede that the recording was done illegally.

[5] However, Defendants would note than in order for an oral conversation to be protected under 934.03, the speaker must have an actual subjective expectation of privacy, along with a societal recognition that the expectation is reasonable. *Cohen Brothers, LLC v. ME Corp, SA.*, 872 So.2d 321, 324 (Fla. 3d DCA 2004). *See also Morningstar v. State,* 428 So. 2d 220 (1982)("Although Morningstar may have maintained a reasonable expectation of privacy in his private office, that expectation under these circumstances is not one which society is willing to recognize as reasonable or which society is willing to protect.")

03 (c) and (d) Fla. Stat. and § 934.06. There is no record evidence that Gee was present at trial, involved in prosecuting this case, or that Gee was even aware of the recordings existence. Summers testified that she did not have any reason to believe that the recording was not consented to. Exhibit M Summers Depo. at 58:13-18. At the time the recording was used in trial Summers and St. Laurent knew that Plaintiff had a common practice of recording his sessions with patients, that Sofronsky came with S.S. to those appointments, and that those appointments were recorded on multiple occasions. Exhibit M Summers Depo at 58:20-59:8. Additionally, in her deposition for Plaintiff's underlying trial his wife and office manager, Gina Ricciardi, testified that the appointments at Plaintiff's medical practice are audio recorded, the audio recordings are provided for the patient's use, and the patient may bring a their own device, such as a phone in order to record these appointments. Exhibit E Ricciardi Depo. at 14:13-15:1. Summers and St. Laurent were present for this deposition and were aware of this practice. Exhibit E Ricciardi Depo. at pg. 2. Defendants had also been informed by Sofronsky that Plaintiff "always recorded his consultations" and had made them aware of two other recordings. Exhibit V Sofronsky Depo[6] at 17:6-12. Summers and St. Laurent both testified that Dr. Woliner could be heard clearly on the audio recording and it sounded as if the audio recording had been placed on a table. There is no record evidence to establish that Summers or St. Laurent knew the recording was recorded in violation of the statute whatsoever. No reasonable jury could find that Summers and St. Laurent believed the recording to be illegal when used at trial. Summary judgment must be granted on Count I as to Summers, St. Laurent, and Gee.

> ### i. Violation of the First and Fourteenth Amendment Pursuant to 42 U.S.C. § 1983

### b. Due Process

In order to prove a procedural due process claim under § 1983, Plaintiff must prove that "(1) a deprivation of a constitutionally-protected liberty or property interest, (2) state action; and (3) constitutionally inadequate process." *Grayden v. Rhodes,* 345 F.3d 1225,1232 (11th Cir. 2003)(citing *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir. 1994)). Plaintiff must also demonstrate a causal connection between the defendant's conduct and the deprivation of the constitutional right. *Arrington v. Cobb City,* 139 F.3d 865, 872 (11th Cir. 1987). The question of what process is constitutionally adequate is resolved by application of the test articulated by the

---

[6] This citation refers to the Deposition of Sofronsky on December 16, 2015 during Plaintiff's underlying prosecution.

11

Supreme Court of the United States in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 Sc.D. 893, 47 L.Ed.2d 18 (1976). The *Mathews* test involves consideration of the following factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Sharma v. Johnston*, No. 10-21560-CIV, 2010 WL 5579885, at *11 (S.D. Fla. Dec. 13, 2010), *report and recommendation adopted sub nom. Sharma v. Johnson*, No. 10-21560-CIV, 2011 WL 127488 (S.D. Fla. Jan. 14, 2011), *aff'd. Sharma v. Johnston*, 515 F. App'x 818 (11th Cir. 2013). A professional license is property which is protected by the Constitution and Plaintiff cannot be deprived of his license without due process. *Id.* at *12. The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews,* 424 U.S. at 902. Only when the state refuses to provide a process sufficient to remedy the procedural deprivation is a constitutional violation actionable under § 1983. *Cotton v. Jackson,* 216 F.3d 1328, 1331 (11th Cir. 2000).

In this instance Plaintiff received notice of the administrative complaints. A probable cause panel from the board of medicine is required to convene in order to determine if there is probable cause in to proceed on the administrative complaints. *See* Fla. Stat. § 456.073(4). Plaintiff received notice of all complaints, retained an attorney, and disputed the allegations. The matter was set for trial at DOAH and Plaintiff conducted discovery in preparation for trial. At trial Plaintiff was represented by counsel, presented evidence, and cross examined witnesses. Plaintiff's counsel made objections as needed. Plaintiff had an opportunity to submit a proposed recommended order and submit exceptions to the court's recommended order, with the assistance of new counsel. Plaintiff attended the Board of Medicine final hearing and participated.

If Plaintiff is alleging that the trial itself is procedurally inadequate this claim also fails. Even if Plaintiff believes he suffered a deprivation during the trial or board of medicine hearing, there is no violation of due process rights unless the state refuses to make available a means to remedy the situation. *McKinney v. Pate,* 20.F.3d. 1550, 1562 (11th Cir. 1994)( "Since the Florida

Court's possess the power to remedy any deficiency in the process by which McKinney was terminated, Mckinney cannot claim he was deprived of procedural due process.") ; *Horton v. Bd. of Cnty. Comm's of Flagler Cnty,* 292 F.3d 1297, 1300 (11th Cir. 2000). When Plaintiff's license was revoked he sought appellate review regarding the procedural issues at trial, including allegations that the recording was obtained illegally and that the expert's testimony was improper. The First District Court of Appeal reviewed his claims and chose to deny them. The record is clear that Plaintiff was afforded extensive due process.

Any claim for a violation of substantive due process rights would also fail as a matter of law. The Eleventh Circuit has held that a substantive due process claim based on a denial of a "state-defined property right" cannot state a claim for violation of substantive due process rights. *Greenbriar Village LLC v. Mountain Brook City,* 345 F.3d 1258, 1263 (11th Cir. 2003). This is because the concept of substantive due process intends to protect fundamental rights, or rights created by the constitution. *Id.* Property interests are not created by the Constitution. *Id*. Summary judgment must be granted for the defendants.

### c. First Amendment Retaliation

In order to prove a claim under § 1983 for first Amendment Retaliation a Plaintiff must establish the following elements, "(1) the plaintiff engaged in speech or an act that was constitutionally protected, (2) the defendant's retaliatory conduct adversely affected the protected speech or act, and (3) there is a causal connection between the retaliatory actions and the adverse effect on the constitutionally-protected speech or act." *O'Boyle v. Sweetapple*, 187 F. Supp. 3d 1365, 1370 (S.D. Fla. 2016); *Bennett v. Hendrix,* 423 F.3d 1247, 1250 (11th Cir. 2005).

Plaintiff's Complaint alleges no more than the legal conclusions which are entirely unsupported by facts or the record. The Complaint does not allege the necessary elements of this cause of action and these claims should fail on this basis alone. Plaintiff does not claim, nor does the record evidence support, that his speech activities were adversely affected by the Defendants' actions. Record evidence demonstrates that there is no casual connection between Defendants' actions and Plaintiff's speech. Plaintiff must prove that his speech was the "but-for" cause of the allegedly retaliatory action. *Lozman v. City of Rivera Beach,* 39 F.Supp 3d 1392 (S.D. Fla. 2014). Plaintiff can prove causation by demonstrating evidence of the following: "(1) an usually suggestive temporal proximity between the protected activity and the alleged retaliatory act, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.*

Plaintiff's claim is not made against DOH. Plaintiff must establish a causal connection between the protected speech and the specific actions of Summers, St. Laurent and Gee. Plaintiff cannot do so based on the record evidence. Plaintiff's complaints were made to MQA, not the prosecution services unit where Summers and St. Laurent worked. DE 1-2 at ¶ 17.  Plaintiff only claims to have made two phone calls and a few emails to Lucy Gee regarding his complaints of unlicensed activities. Plaintiff does not recall when those phone calls were made. He has no recollection of those activities and admits that Ms. Gee never discouraged him from filing complaints or told him that he should not file complaints. Most importantly, the record is devoid of any evidence to support Plaintiff's speculation that Ms. Gee was involved in the prosecution.

Summers was not employed at DOH until September of 2014. Per Plaintiff this is when he stopped making complaints against DOH. Per Plaintiff there is no evidence that Summers had any involvement in complaints he made to DOH.   Plaintiff testified that he made one complaint in 2013-2014 regarding unlicensed activity in which St.  Laurent was involved. Plaintiff does not recall the details of this interaction. Plaintiff's argument that these Defendants retaliated by bringing the prosecution of his license is belied by the fact that a neutral probable cause panel, consisting of medical doctors, decided there was sufficient probable cause to file   the administrative complaints. Plaintiff does not properly plead these claims and there is no record evidence of a causal connection between Plaintiff's speech activities and his prosecution.

**d. Count III Conspiracy to Violate Civil Rights**

Section 1985(3) provides a cause of action for conspiracy to deprive "any person or class of persons of the equal protection of laws. 42 U.S.C. § 1985(3). The elements of a cause of action under § 1985(3) are: "(1) conspiracy, for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Childree v. UAP/GA CHEM, Inc.,* 92 F.3d 1140,1146-67 (11th Cir. 1996)(finding that "whistleblowers" are not a protected class for the purposes of stating § 1985 claim). The second element requires a showing of racial or class-based "discriminatory animus behind the conspirators' action." *Id.* The narrow intent requirement of the section is a "significant hurdle for § 1985 (3) plaintiffs." *Id.* at 1147 (quoting *Burrell v. Board of Trustees of Ga. Military College,* 970 F.2d 784,794 (11th Cir. 1992)). Courts have repeatedly found that claims under § 1985 fail when the plaintiff cannot demonstrate that he

14

is  protected class or that there there is a discriminatory animus behind the alleged conspiracy. *See Farese v. Scherer,* 342 F.3d 1223, 1229 n. 7 (11th Cir. 2003); *Barth v. McNeely,* 603 F.App'x 846, 850 (11th Cir. 2015) ; *Robb v. Rahi Real Estate Holdings, LLC,* No. 10-81474-CIV, 2011WL2149941 at *4 (S.D. Fla. May 23, 2011). Plaintiff does not allege that any of the actions taken against him were motivated by racial discrimination. Plaintiff did not plead that he was a member of a protected class. Plaintiff is a white male. Plaintiff testified that he is not a member of a racial minority nor does he consider himself to be a member of a minatory. There is no record evidence of any understanding or agreement amongst the defendants. *See Parker v. Butterfield,* 2018WL1972798 at * 4 (M.D. Fla. Apr. 9, 2018). Plaintiff concedes that there is no direct evidence that Summers, St. Laurent, and Gee were involved in a conspiracy. Plaintiff must establish that the conspiracy violated his civil rights and he cannot do so.

### e.  Count IV Intentional Infliction of Emotional Distress

#### i.  Plaintiff Cannot State A Claim

To prove a claim for intentional infliction of emotional distress, the plaintiff must show "(1) the wrongdoer's conduct was intentional or reckless, that is, he intended his behavior when he knew or should have known that emotional distress would likely result (2) the conduct was outrageous, that is, as to go beyond all bounds of decency, and to be regarded as odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Deauville v. Hotel Management, LLC. v. Ward,* 219 So. 3d 949, 954-55 (Fla. 3d DCA 2017). It is not sufficient for the action to be tortious, criminal or that the defendant intended to inflict the distress. *Id.*  The Plaintiff's ***subjective response to the actions do not control***, the conduct must be evaluated objectively. *U.S. v. ex rel. Crenshaw v. Degayner,* 622 F.Supp 2d 1258, 1282 (M.D. Fla. 2008)(emphasis added). Consideration of whether conduct will meet this high standard is a legal question which the court may decide as a matter of law. *Id.* Plaintiff claims that the Defendants caused him intention infliction of emotional distress by using "hired gun" experts at his trial, concealing the recording, using the recording in court at trial, and failing to preserve the recording as a public record. In viewing this conduct in the light of the material, undisputed facts, this conduct was not reckless and does not rise to the level of outrageous conduct as described under Florida Law. Plaintiff also concedes that other than emails which he construes as other DOH employees gossiping about

him, there is no evidence that the activities of Summers, St. Laurent of Gee were taken with the intent to cause him emotional distress.

### ii. Litigation Privilege

The allegations Plaintiff makes with respect to these Defendants stem from the decisions made during the litigation of his case and at trial. Because these claims arose during the course and scope of the prosecution of his medical license, they are protected by the litigation privilege. "Absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement of other tortious behavior..." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So.2d 606, 608 (Fla. 1994). *See e.g. Green Leaf Nursey v. E.I. DuPonte Nemours and Co.,* 342 F.3d 1292, 1302 (11thCir. 2003); *Jackson v. BellSouth Telecommunications,* 372 F.3d 1250 (11th Cir. 2004). In order for an action to be protected by the litigation privilege, it does not need to occur in a courtroom or during trial, but is only required to be related to the judicial proceedings. *Jackson,* 372 F.3d at 1275 (applying the litigation privilege to settlement negotiations). In this case the choice of expert, the presentation of evidence at trial, and the rtention of evidence are all actions taken within the course and scope of litigating Plaintiff's underlying prosecution. Summary judgment should be granted on this basis.

## II. DEFENDANTS ST. LAURENT AND SUMMERS ARE ENTITLED TO ABSOLUTE IMMUNITY ON ALL COUNTS

In *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894 (1978), Plaintiff alleged that the members of the Department of Agriculture had instituted an administrative proceeding against him in retaliation for his criticism of the agency. *Id.* at 481. The Supreme Court considered whether officials for the Department of Agriculture were entitled to absolute immunity. The court held that, "[An] agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suit based on the introduction of such evidence." *Id.* at 517. The court reasoned that, "We can see no substantial difference between the function of an agency attorney in presentencing evidence in an agency hearing and the function of the prosecutor who brings evidence before the court." *Id.* at 516. In determining whether an agency attorney or executive branch official is entitled to absolute immunity, the courts take a functional approach, looking at the nature of the function performed and not the identity of the person who performed it." *Hart v. Hodges,* 587 F.3d 1288, 1295 (11th Cir. 2009).

The court will grant absolute immunity for certain functions intimately associated with the judicial process. *Id.* This includes functions such as preparing for the initiation of a judicial proceeding for trial, the decision to initiate or continue with the enforcement of an administrative case, and examining witnesses and presenting evidence. *Butz,* 438 U.S. at 516; *see also Aisenberg v. Hillsborough County Sheriff's Office,* 325 F. Supp 2d. 1366, 1375-76. In *Aisenber*g, the court found absolute immunity applied to a prosecutor using an allegedly surreptitious tape recording during a presentation to a grand jury. *Id.* at 1376. This immunity applies even if an attorney is alleged to have fabricated exhibits or proffered perjured testimony. *Overcash,* No. 5:15-cv-555-oc-41PRL, 2017WL4278496 at *5 (M.D. Fla. Mar. 29, 2017). Further, the immunity extends to conspiracy claims if the prosecutor would receive immunity for the acts upon which the conspiracy claim relies. *Aisenberg,* 325 F. Supp 2d. at 1380-1381; *Fullman v. Graddick,* 739 F.2d 553, 559 (11th Cir. 1984).

Courts in this jurisdiction have also found that "Agency officials performing certain actions analogous to those of a prosecutor are entitled to absolute immunity for those claims for damages under § 1983." *Overcash,* 2017WL4278496 at * 5 (applying immunity to attorneys acting on behalf of DCF who were accused on putting on false evidence in a dependency proceeding); *Plunkett v. Rountree,* No.CV214-015, 2015 WL 1505960 at *15 (S.D. Ga. Mar. 31 2015)(attorney representing DCF in dependency proceeding entitled to immunity);*Davis v. Self,* 960 F. Supp 2d 1276, 1307 (N.D. Ala. 2013) *affirmed by Davis v. Self,* 547 F.App'x 927,932 (11th Cir. 2013)(attorneys for the state who were civilly enforcing child support payments were entitled to absolute immunity); *Howard v. Miller,* 870 F.Supp 340, 344 n. 7 (N.D. Ga 1994)(finding that board of medicine members act in a prosecutorial/judicial capacity when they suspended Plaintiff's privileges and medical license.). Other jurisdictions have found that absolute immunity applies to attorneys acting for the state in medical licensing disciplinary procedures. *see Daniels v. Davis,* No.Co8-5396FDB, 2008WL4681597 (W.D. Wash Oct. 21, 2008). Likewise, Florida common law also shields prosecutors from actions in connection with a prosecution. See *Berry v. State,* 400 So.2d 80 (Fla. 4th DCA 1981).

The purpose of meeting with Sofronsky the day before trial was to prepare for her upcoming testimony. Likewise the decision to use the recording and the choice of experts in this case are decisions made in preparation of the prosecution and the presentation of evidence. *Buckley v. Fitzsimmons,* 509 U.S. 259, 272-73 (1993)("out of court effort to control the

presentation of a witnesses testimony was entitled to absolute immunity because it fell fairly within the prosecutor's function as an advocate.")   The decision to play the recording was a discretionary decision by Summers and St. Laurent regarding the presentation of evidence and trial strategy. This action is protected, even if it was alleged to have been committed in bad faith or with malicious intent.

### III. DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ON COUNT II

Plaintiff alleges that Summers and St. Laurent "destroyed evidence" by failing to preserve the recording as a public record. When prosecutors undertake discretionary functions unrelated to preparation for trial, these functions may still entitled to qualified immunity if the act did not clearly violate Plaintiff's constitutional rights. *See Aisenberg,* 325 F. Supp 2d at 1378. Qualified immunity is a protection afforded to governmental employees from liability in civil lawsuits so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   Governmental employees must be able to go about their work and engage in their "discretionary duties" without fear of the potential for personal liability. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To receive qualified immunity, a government official must first prove that they were acting within their discretionary authority. *Caldwell v. Warden*, *FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). This is shown through "objective" circumstances to establish performance of duties within the scope of authority.   *Courson v. McMillan*, 939 F. 2d 1479, 1487 (11th Cir. 1991). Discretionary authority encompasses the job-related functions and responsibilities that a governmental employee has in the fulfillment of their official duties. *Holloman ex rel. Holloman v. Harland*, 370 F. 3d 1252, 1264 (11th Cir. 2004). "Once a defendant establishes that he was acting within his discretionary authority, *the burden shifts to the plaintiff* to show that the defendant is not entitled to qualified immunity." *Vinyard v. Wilson,* 311 F.3d 1340, 1346 (11th Cir. 2002) (emphasis added).   The Supreme Court has established a two-part test to determine the applicability of qualified immunity: (1)"whether, taken in the light most favorable to the plaintiff, the facts alleged show Defendant's conduct violated a constitutional right," and, (2) if so, "whether the right was clearly established." *Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016).   A right is deemed to be 'clearly established' if a reasonable official would

understand that that what he is doing violates that right". *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011). Fair warning and notice that purported conduct violated a constitutional right are necessary to determine if a right is clearly established. *Vinyard*, 311 F. 3d at 1350; *quoting Hope v. Pelzer*, 536 U.S. 730 (2002). Clear establishment of the law is shown by case law that has "been earlier developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law." *Melton v. Abston*, 841 F. 3d 1207, 1221 (11th Cir. 2016).

After the hearing a copy of the recorder was provided to Martha Sofronsky, as it contained personal recordings that had once belonged to her daughter. The handling of the recorder occurred immediately after the trial and was performed in the course and scope of Summers and St. Laurent's duties as DOH employees. Given these circumstances, a reasonable government actor would not believe that the actions taken would violate Plaintiff's constitutional rights. *Sharma,* 2010WL5579885 at *12 is instructive. In that case Plaintiff sued a DOH investigator alleging that she violated his due process rights and vindictively prosecuted him. *Id.* at 13. The Court found that the material facts indicated the case was nothing more than the typical investigation and that a reasonable investigator would not have understood she was violating a physician's rights and granted qualified immunity. *Id*. at 14. Should the court decide that Plaintiff alleged a violation of constitutional rights in Count II qualified immunity is appropriate.

## IV. <u>PLAINTIFF'S CLAIMS ARE BARRED BY RES JUDICATA AND COLLATERAL ESTOPPEL</u>

The purpose of the *res judicata* doctrine is to protect a party's adversaries from the expense and vexation of multiple lawsuits and minimize the possibility of inconsistent decisions. *Montana v. United States,* 440 U.S. 147 (1979). Florida Courts apply the law from the state in which they sit to determine *res judicata. Wesch v. Folsom,* 6 F.3d 1465, 1471 (11th Cir. 1993). Florida preclusion law defines identical causes of action as those "sharing similarity of facts essential to both actions." *Fields v. Sarasota Manatee Airport Authority,* 953 F.2d 1299, 1308 (11th Cir. 1992). A party seeking res judicata must show that the prior decision was "(1) rendered by a court of competent jurisdiction (2) was final (3) involved the same parties and their privies and (4) involved the same causes of action." *Trustmark Co v. ESLU, Inc.,* 299 F.3d 1265,

1269 (11th Cir. 2002). In determining whether the causes of action are the same, the court will look to the factual issues in the present case, and compare the issues with the first case. *Citibank N.A. v. Data Lease Fin. Corp.,* 904 F.2d 1498, 1503 (11th Cir. 1990). If the case arises out of the same nucleus of operative fact, or are based upon the same factual predicate, they are considered to be the same clam for the purposes of res judicata. *Id.*  Florida courts will apply res judicata to administrative proceedings, provided that the administrative proceedings contain the following:

> "(1) adequate notice; (2) the right to present evidence and legal argument; (3) a formulation of issues of law and fact for the application of rules to specified parties concerning a specific transaction, situation, or status; (4) a rule of finality, specifying a point when presentations are terminated and a final decision is rendered; and (5) other procedural elements as may be necessary to make the proceeding a sufficient means of conclusively determining the matter in question."

*Fla. Transp. Serv., Inc. v. Miami-Dade Cty.,* 757 F. Supp. 2d 1260, 1271 (S.D. Fla. 2010), *aff'd sub nom. Fla. Transp. Servs., Inc. v. Miami-Dade Cty*., 703 F.3d 1230 (11th Cir. 2012).

The record reveals that all the element of *res judicata* are present. The case went to a final disposition where Plaintiff and DOH were parties. The Defendants in this case are DOH employees, who would not be a part of this litigation but for their privity with DOH. Plaintiff's lawsuit essentially boils down to three procedural issues: That DOH's experts were inappropriate, the recording was illegal intercepted communication, and the use of the recording at trial was improper. The recording is the center of Plaintiff's claims for civil rights violations. These issues were not only objected to at the trial stage of the prosecution but were litigated extensively on appellate review. (See Exhibit O Trial Transcript Volume II at 300:7-318:11 and Exhibit A at Exh. 8, Plaintiff's Initial brief at pgs. 5-50). The appellate court affirmed the trial court's decision. The DOAH trial contained all the procedural hallmarks necessary for the application of *res judicata* in this instance.

The doctrine of collateral estoppel prohibits the litigation of any issue that was decided in another action and was essential the prior adjudication. *Fla. Trans. Servs. Inc.,* 757 F. Supp 2d at 1272. As evidenced by Plaintiff's appellate briefings, the issue of whether the recording was illegal and admissible was a central focus. Plaintiff also argued at length that it was inappropriate for DOH to use a doctor outside the scope of Plaintiff's practice. The First District Court of Appeal ruled on these issues after they were fully briefed. Plaintiff is unable to re-litigate them here under the guise of civil rights claims and intentional torts.

## CONCLUSION

Speculation and theories are insufficient to prove these claims. The record evidence does not support Plaintiff's claims and not provide Plaintiff an opportunity to re-litigate matters raised during the trial in his underlying prosecution. No reasonable jury could find for Plaintiff on these claims. Summary judgment should be granted to the Defendants on all counts.

Dated: <u>January 14, 2019</u>

Respectfully Submitted,

**s/ James O. Williams**
James O. Williams Jr., Esq.
(eService@wlclaw.com)
Florida Bar No. 0614513
Jessica R. Butler, Esq.
Florida Bar No. 118586
Attorney for Defendants Kristen Summers,
Louise Wilhite St. Laurent, Lucy Gee
Williams, Leininger & Cosby, P.A.
11300 US Highway One, Suite 300
North Palm Beach, Florida 33408
Telephone No. (561)615-5666
Facsimile No. (561)615-9606

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 14, 2019, I electronically filed the foregoing document with the Clerk of Court using its CM/ECF system, and sent a copy via email to the parties listed below.

**s/ James O. Williams**
Florida Bar No. 0614513

**Service List**

Kenneth Woliner, M.D.
12173 Glenmore Dr.
Coral Springs, FL 33071
Knw6@cornell.edu
drwoliner@wolinermd.com
*Pro Se Plaintiff*

Broderick Taylor, Esq.
1806 N. Flamingo Road, Suite 322
Pembroke Pines, FL 33028
Telephone No. (954) 289-1614
Facsimile No. (954) 790-6732
Broderick@theTLGroup.com
*Attorney for Martha Sofronsky*